GILL SPERLEIN (172887)
THE LAW OFFICE OF GILL SPERLEIN
584 Castro Street, Suite 849
San Francisco, California  94114
Telephone: (415) 487-1211 X32
Facsimile: (415) 252-7747
legal@titanmedia.com

Attorney for Plaintiff
IO GROUP, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IO GROUP, INC., a California corporation, | **CASE NO.: 07-5026 (MHP)** |
| Plaintiff, | **PLAINTIFF'S MISCELLANEOUS ADMINISTRATIVE REQUEST PURSUANT TO LOCAL RULE 7-11 FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26 CONFERENCE; AND [PROPOSED] ORDER** |
| vs. | |
| GILBERT MICHAEL GONZALES, an individual; and DOES 1-21, individuals, | |
| Defendants. | |

Pursuant to Local Rule 7-11, plaintiff seeks leave to take limited discovery prior to the scheduled Rule 26 conference for the reasons set forth herein, and in the concurrently filed declaration. Stipulation for this motion could not be achieved because Gilbert Michael Gonzales, the one named defendant in this matter, has yet to appear and the remaining defendants have yet to be identified. Sperlein Decl at ¶2. Indeed, the reason for which plaintiff seeks leave to take early discovery is so that it may uncover the identities of the DOE defendants.

## INTRODUCTION AND FACTUAL BACKGROUND

Io Group, Inc. is a California corporation doing business as "Titan Media," with its principal place of business located at 69 Converse Street, San Francisco, California 94103. Titan Media produces, markets, and distributes adult entertainment products, including Internet website content, videos, DVDs, photographs, etc. Plaintiff operates and maintains a website by and through which its photographic and audiovisual works can be viewed by individuals who pay a monthly subscription fee. Complaint at ¶2.

Defendant DOES 1-21 are individuals whose true names and addresses are unknown to plaintiff. *Id*. at ¶¶ 6 and 7. Defendant GILBERT MICHAEL GONZALES operated a website/blog at the Internet domain mcgsmen2.ning.com, by and through which GONZALES and DOE Defendants 1-21 distributed unauthorized and infringing copies of plaintiff audiovisual works. *Id. passim*.

As authorized under 17 U.S.C. §512(h), the Clerk of the Court issued (and plaintiff has served) a subpoena to Ning, Inc., the Internet service provider that provides free hosting and other support services for mcgsmen2.ning.com, in order to obtain the internet protocol ("ip") addresses for the users who infringed plaintiff's works by an through mcgsmen2.ning.com. *In re Io Group, Inc.*, C-07-80228-MISC (Ordered related to *Io Group, Inc. v. Gonzales, et. al*, C-07-5026 (MHP), October 15, 2007).

Once Ning, Inc. has fully responded to the outstanding subpoena and has identified to plaintiff the ip addresses associated with each of the infringing acts, the true identity of the infringers may only be obtained by way of further investigation. Specifically, plaintiff must then subpoena the Internet access providers which control the identified ip addresses in order to determine the identity of the subscribers to whom the Internet access provider assigned the ip

addresses. Generally, service providers maintain subscriber activity logs indicating which of its subscribers were assigned an ip address at any give date and time. Ruoff Decl. at ¶2.

In plaintiff's experience, Internet access providers only maintain subscriber activity logs for a short period of time before destroying the information contained in the logs. *Id*. Because the infringing activity did not occur on equipment that was part of the service providers' systems, a subpoena under 17 U.S.C. §512(h) may not be authorized. *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 359 U.S. App. D.C. 85 (D.C. Cir. 2003), *reh'g en banc denied*, 2004 U.S. App. LEXIS 3564 (D.C. Cir., 2004), *cert. denied* 125 S. Ct. 309 (2004). Accordingly, plaintiff requests leave from the Court to serve Rule 45, third-party, subpoenas on the ISPs prior to the Rule 26 Case Management Conference in this matter.

Federal law provides for the relief plaintiff seeks.

## ARGUMENT

**Federal Rules Allow for Early Discovery**

Federal Rules allow for discovery prior to a Rule 26 conference when good cause is shown. *See Semitool, Inc. v. Tokyo Electronic America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002).

More specifically, courts have recognized that, "[s]ervice of process can pose a special dilemma for plaintiffs in cases like this in which the tortuous activity occurred entirely on-line." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). Accordingly, courts have developed the following factors to consider when granting motions for expedited discovery to identify anonymous Internet users: (1) whether the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) all previous steps taken by the plaintiff to identify the Doe

defendant; and (3) whether the plaintiff's suit could withstand a motion to dismiss. *Id*. at 578-80. Each of these factors resolves in favor of granting plaintiff's requested relief.

First, plaintiff has sufficiently identified individuals who are real persons who can be sued in Federal Court. Plaintiff identified individuals who registered specific user names on the Ning.com system. Complaint at ¶¶ 41 to 61. Plaintiff observed and documented infringement of its registered works by the individuals identified by the various specific user names identified in the Complaint. Ruoff Decl. at ¶ 3. The requested discovery will allow plaintiff to determine the true name and address of the individuals who performed the infringing acts.[1] Sperlein Declaration at ¶¶7 and 8.

Second, there are no other practical measures plaintiff could take to identify the DOE defendants. Plaintiff is aware of no available information that would identify the infringing users, other than information that may be maintained by Ning, Inc. (ip addresses recorded during infringing activity and information provided during user registration) and the individual Internet access providers (the name and address of account holders assigned the ip addresses identified by Ning, Inc.). Due to the nature of on-line transactions, plaintiff has no way of determining defendants' true identities except through third-party subpoenas. Ruoff Decl. at ¶4; Sperlein Decl. at ¶9.

Third, plaintiff has asserted a *prima facia* claim for direct copyright infringement in its complaint that can withstand a motion to dismiss. Specifically, plaintiff has alleged that a) it owns and has registered the copyrights in the works at issue and b) the defendants copied, distributed

---

[1] If the account holder claims that someone else accessed the Internet to perform the infringing acts using his account (for example another person in the household), then further discovery may be required to identify the culpable party.

-4-

and/or publicly displayed those copyrighted works without plaintiff's authorization. Complaint at ¶¶39 through 62. These allegations state a claim for copyright infringement. 17 U.S.C. § 106(1)(3).

When outlining the above factors, the court in *Columbia* noted that in cases where injured parties are likely to find themselves chasing unidentified tortfeasors from Internet service provider (ISP) to ISP, the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with a forum in which they may seek redress for grievances. *Columbia*, 185 F.R.D. at 579. An analysis of the factors clearly demonstrates plaintiff's legitimate interest in identifying the name and address of the individuals who infringed upon its copyrighted works.

**Explanation of Specific Requests**

In addition to the three factors discussed above, courts have indicated that a plaintiff requesting early discovery to identify defendants should justify specific requests and explain how such requests "will lead to identifying information about defendant that would make service of process possible. *See Columbia* 185 F.R.D. at 580; *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir.1980). Plaintiff provides the following information concerning the specific requests for early discovery.

The infringement at issue in the matter is an example of the latest scheme infringers have developed for sharing infringing works with each other via the Internet. The infringing activity revolves around an Internet web log commonly referred to as a blog. A blog is a website where entries are written in chronological order. An increasingly important part of blogs is the ability for readers to leave comments in an interactive format. Ruoff Decl. at ¶6.

Ning.com is one of many commercial enterprises that provide free hosting and other support for individuals who wish to operate blogs. Typical of this arrangement, the domain name of the blog site consists of the free host provider's base domain and a subdomain determined by the individual operating the blog. Thus in this matter the name of the blog site, mcgsmen2.ning.com, consists of Ning's base domain name (ning.com) and the name of Defendant Gonzales' blog (mcgsmen2). *Id*. at ¶7.

Bloggers, as the individuals who operate blogs are referred to, may write about any number of topics. In this matter, Gonzales operated his blog as a place to trade sexually explicit audiovisual files without regard to copyright. At Gonzales' invitation, users traded audiovisual works in several ways. Users either uploaded a video file so that it could play directly from the mcgsmen2.ning.com site, or they posted links to other locations where the user stored the infringing files. In most cases, users also uploaded an example of the material available on the infringing audiovisual files in the form of a series of still frame images extracted from the file, referred to as "screen captures" or "screen caps". *Id*. at ¶8. The creation, distribution and display of the screen captures represent additional acts of infringement.

It is often difficult to identify individuals operating on the Internet because they frequently provide bogus information when registering to participate on a particular website, such as ning.com or the blog operated by Gonzales at mcgsmen2.ning.com. This is particularly true when the individual is accessing the site in order to engage in illegal activity such as copyright infringement. On the other hand, when an Internet user subscribes with an Internet service provider in order to get Internet access (also referred to as an Internet access provider) the user by necessity does provide accurate information for the simple reason that the Internet access provider

must supply cable to the subscriber's access location[2] and generally bills the subscriber on a monthly basis. *Id*. at ¶9.

When an Internet access provider supplies a connection to the Internet, the connection is identified by a series of numbers called an Internet protocol ("ip") address. An ip address can be analogized to a telephone number. Just as a telephone company provides a telephone number to its customers so does an Internet access provider assigns an ip address to each of its subscribers. Just as caller ID allows someone to identify the telephone number and thus the location from which a call is originating, so can a website determine the ip address and thus the location from which Internet activity is originating. *Id*. at ¶10.

When a user accesses a website such as mcgsmen2.ning.com, the website generally records the ip address being used to access the site and stores that information on the its server logs. In this case, each of the DOES accessed the website mcgsmen2.ning.com uploaded data either in the form of an infringing audiovisual file and/or a link to an infringing file. *Id*. at ¶11. Plaintiff has already subpoenaed Ning, Inc. for the weblog records containing the ip addresses of the infringing users, as well as, any other data that may help identify the infringers. Sperlein Decl. at ¶3. Ning has provided a limited response identifying ip addresses for five of the twenty-two identified users. Plaintiff's counsel is in communication with Ning's inside and outside counsel, who report that Ning is diligently attempting to provide a more complete list of ip addresses but has been delayed due to technical difficulties and limited resources. Sperlein Decl. at ¶4.

---

[2] If the subscriber uses a satellite service for Internet access, the Internet access provider must still visit the access location in order to activate equipment used to receive and send signals to the Internet.

Anyone can perform a simple search on public databases to determine which Internet access provider controls a specific ip address. Ruoff Decl. at ¶12. As Ning produces the ip addresses of the infringers, plaintiff can perform a simple search on public databases to determine which Internet access provider controls the specific ip address. For example, Ning responded that the ip address recorded for the user "titgars" on September 10, 2007 was 71.198.70.77 and that the ip address recorded for the user "serendip" on September 10, 2007 was 72.25.120.81. Sperlein Decl. at ¶5. A search of public data bases indicates that Comcast Cable Communications controls the ip address 71.198.70.77 and DSL Extreme controls the ip address 72.25.120.8. *Id*. at ¶6. Plaintiff now seeks to subpoena Comcast Cable Communications and DSL Extreme to determine the name and address of the subscribers to whom they assigned the respective ip addresses at the times and dates in question.

Often larger Internet access providers that control blocks of ip addresses will subassign smaller blocks of ip addresses to smaller (downstream) access providers, who in turn assign the ip addresses to individual subscribers. In such cases, the large access providers will only be able to identify the downstream access provider and a second subpoena will be necessary to identify the individual subscribers. *Id*. at ¶13.

Plaintiff requests that the Court issue an order allowing plaintiff to serve subpoenas on two United States based Internet access providers identified by Ning in response to Plaintiff's initial subpoena. Examples of the proposed subpoenas are attached hereto as Exhibit A.

Since access providers only retain information for a limited time and since Ning's response has been significantly delayed it is imperative that plaintiff be able to serve subpoenas as soon as it learns the ip address for each identified Ning user. Therefore, plaintiff request that the Court issue

an order sufficiently broad to allow plaintiff to immediately subpoena additional United States based Internet access providers as for other ip addresses as soon as Ning identifies them.

Moreover, because plaintiff may be required to serve additional subpoenas in situations where access providers sublease ip ranges to other access providers, plaintiff also request that any order from the Court allow plaintiff to serve such additional subpoenas.

## CONCLUSION

For the forgoing reasons, plaintiff respectfully asks that the Court grant plaintiff's request and enter an order substantially in the form of the attached Proposed Order.

Dated: *November 5, 2007*          Respectfully submitted,

*/s/ Gill Sperlein*
_____
GILL SPERLEIN
Attorney for Plaintiff IO GROUP, INC.

# [PROPOSED] ORDER

Having considered Plaintiff's Miscellaneous Administrative Request Pursuant to Local Rule 7-11 for Leave to Take Discovery Prior to Rule 26 Conference and finding good cause therefore,

**IT IS HEREBY ORDERED,** that plaintiff is granted leave to take early discovery. Plaintiff may immediately serve the subpoenas attached to plaintiff's Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference as Exhibit A.

**IT IS FURTHER ORDERED**, that plaintiff may serve additional subpoenas on United States based Internet access providers who control other ip addresses associated with infringement of plaintiff's works as Ning, Inc. identifies those ip addresses to plaintiff. Any such subpoenas must be in substantially the same form as those attached to plaintiff's Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference as Exhibit A.

**IT IS FURTHER ORDERED**, that if any access provider served with a subpoena in accordance with the above provisions identifies a downstream access provider rather than an individual subscriber, plaintiff may serve an additional subpoena on the downstream provider in order to identify the individual subscriber, provided the subpoena is in a form substantially similar to those attached to plaintiff's Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference as Exhibit A.

Dated:_____          _____

United States District Judge
Marilyn Hall Patel

PLAINTIFF'S REQUEST FOR LEAVE
TO TAKE EARLY DISCOVERY
C-07-5026 (MHP)

# CERTIFICATE OF SERVICE

I am over 18 years of age, am employed in the county of San Francisco, at 69 Converse Street, San Francisco, California, 94110 in the office of a member of the Bar of the United States District Court for the Northern District of California. I am readily familiar with the practice of this office for collection and processing of correspondence for mailing with United Parcel Service and correspondence is deposited with United Parcel Service that same day in the ordinary course of business. Today I served the attached:

- **PLAINTIFF'S MISCELLANEOUS ADMINISTRATIVE REQUEST PURSUANT TO LOCAL RULE 7-11 FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26 CONFERENCE; AND [PROPOSED] ORDER;**
- **DECLARATION OF GILL SPERLEIN IN SUPPORT OF REQUEST; and**
- **DECLARATION OF KEITH RUOFF SPERLEIN IN SUPPORT OF REQUEST**

by causing a true and correct copy of the above to be placed in United Parcel Service at San Francisco, California in a sealed envelope with postage prepaid, addressed as follows:

Gilbert Michael Gonzales
66640 Granada Avenue
Desert Hot Springs, CA  61867

United States District Court
450 Golden Gate Avenue
San Francisco, CA  94102

e-filing Chambers Copy
*Io Group, Inc. v. Gonzales*, C-07-5026 (MHP)

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 5, 2007.

>  */s/ Steve Azbell*
>  Steve Azbell

I hereby attest that this is the declaration of Steve Azbell and the original with Steve Azbell's holographic signature is on file for production for the Court if so ordered, or for inspection upon request by any party.  Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: *November 5, 2007*                    */s/ Gill Sperlein*
                                              GILL SPERLEIN,
                                              Counsel for Plaintiff Io Group, Inc.

-1-