GILL SPERLEIN (172887)
THE LAW OFFICE OF GILL SPERLEIN
584 Castro Street, Suite 849
San Francisco, California  94114
Telephone: (415) 487-1211 X32
Facsimile: (415) 252-7747
legal@titanmedia.com

Attorney for Plaintiff
IO GROUP, INC.


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| IO GROUP, INC., a California corporation, | **CASE NO.: 07-5026 (MHP)** |
| Plaintiff, | **APPLICATION FOR DEFAULT** |
| | **JUDGMENT BY COURT, MEMORANDUM** |
| vs. | **OF POINTS AND AUTHORITIES IN** |
| | **SUPPORT OF APPLICATION FOR** |
| | **DEFAULT JUDGMENT BY COURT; AND** |
| GILBERT MICHAEL GONZALES, an | **[PROPOSED] ORDER** |
| individual, | |
| Defendant. | Date:  April 7, 2008 |
| | Time:  3:00 p.m. |
| | Ctrm:  15, 18th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:


PLEASE TAKE NOTICE that on April 7, 2008 at 3:00 p.m. or as soon thereafter as this matter

may be heard by the above-entitled court, located at 450 Golden Gate Avenue, San Francisco,

California, 94102, plaintiff will present its application for a default judgment against Defendant

Gilbert Michael Gonzales.  The Court entered the default of said defendant on January 3, 2008.

-i-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

SUMMARY OF ARGUMENT ...................................................................................... 1

APPLICATION FOR DEFAULT JUDGMENT ........................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

ISSUES TO BE DECIDED ........................................................................................... 3

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT .................................................................................................................. 7

I. Damages for Copyright Infringement ...................................................................... 7

II. Increased Damages for Willfulness ....................................................................... 11

VII. A Damages Hearing Is Not Required by Law ................................................... 14

CONCLUSION ............................................................................................................ 15

PROPOSED ORDER

1

## TABLE OF AUTHORITIES

2

### CASES

3

4

*Danning v. Lavine*, 572 F2d 1386 (9th Cir. 1978) ..................................................... 1, 12

5

*Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110 (2nd Cir. 1986)

6

.................................................................................................................................... 12

7

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 97 L. Ed. 276,

8

73 S.Ct. 222 (1952) ........................................................................................................ 12

9

10

*Hickory Grove Music v. Andrews*, 749 F. Supp. 1001 (D.Mont. 1990) ........................ 13

11

*International Korwin Corp. v. Kowalczyk,* 665 F. Supp. 652 (D.N.Ill. 1987) ............... 12

12

*James v. Frame,* 6 F.3d 307 (5th Cir. 1993) ................................................................. 14

13

*Nishimatsu Construction Co., Ltd. V. Houston Nat'l Bank*, 515 F2d 1200 (5th Cir. 1975) ......... 12

14

*Peer International Corp. v. Pausa Records*, 909 F.2d 1332 (9th Cir. 1990) ................. 12

15

16

*Perfect 10, Inc. v. Talisman Communs., Inc.,* 2000 U.S. Dist. LEXIS 4564. (C. D. Cal. Mar. 27,

17

2000)......................................................................................................................... 1, 8, 10

18

*Playboy v. Webbworld*, 968 F. Supp. 1171 (E.D. Tex. 1997) ....................................... 10

19

*Reebox International v. Jemmett*, No. 87-1415, 1990 U.S. Dist. LEXIS 18519 (S.D.Cal. Oct. 4,

20

1990)............................................................................................................................... 12

21

22

*Spectavest, Inc. v. Fleet Street, Ltd.*, No. 88-4539(RFP) 1989 U.S. Dist. LEXIS 16594 (N.D. Cal.

23

Aug. 22, 1989)................................................................................................................ 12

24

*Van Halen Music v. Foos,* 728 F. Supp. 1495,  (D. Mont. 1989) ................................. 13

25

26

27

28

STATUTES

17 U.S.C. § 504 ............................................................................................... 1, 7, 14

17 U.S.C. § 504(c) ............................................................................................. 11, 12, 14

FRPC 55(b)(2) .................................................................................................. 13, 14

DECLARATIONS AND EXHIBITS

Gill Sperlein Declaration

Keith Webb Declaration

-iv-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF ARGUMENT

In this action for copyright infringement, the Court entered default against Defendant Gilbert Michael Gonzales. Plaintiff voluntarily dismissed all other defendants and hereby applies for entry of default judgment as to Defendant Gonzales.

Facts pleaded in the complaint are admitted by default. *Danning v. Lavine*, 572 F2d 1386,1388 (9th Cir. 1978). As pled in the First Amended Complaint, Defendant operated a piracy ring through which he without authorization engaged in the large scale reproduction, distribution and public display of plaintiff's copyrighted works. 1st Amen. Complaint at ¶7. Gonzales is also liable as a contributory infringer because he induced, caused and materially contributed to the infringing acts of others by establishing and operating the location of the infringing activity, while having knowledge of the infringing acts. *Id*. at ¶¶ 55 and 59. Gonzales was also vicariously libel for these acts of infringement because he had the right and ability to control the infringing activity while obtaining a direct financial benefit from the infringing activity. *Id*. at ¶¶ 60-64.

The Court may award statutory damages from $750.00 to $30,000.00 per work as it considers just, increased to $150,000.00 in cases of willful infringement. 17 U.S.C. § 504. If the defendant "knew or should have known [the works] belonged to someone else at the time that [he] posted them on [his] website [the defendant's] infringement [...] was willful." *Perfect 10, Inc. v. Talisman Communs., Inc.,* 2000 U.S. Dist. LEXIS 4564 at 5. (C. D. Cal. Mar. 27, 2000). Statements made by defendant show that he not only knew the works belonged to others, but that he specifically knew they belonged to plaintiff and knew that plaintiff did not authorize his actions or the actions of the other direct infringers. 1st Amen. Complaint at ¶29.

Plaintiff seeks a $25,000.00 base statutory award for each work Gonzales infringed, multiplied by a factor of three (3) based on the willfulness of his actions for a total of $75,000 per infringed work.

Plaintiff also seeks an injunction prohibiting Gilbert Michael Gonzales from any future unauthorized reproduction, display, or distribution of any plaintiff owned work.

## APPLICATION FOR DEFAULT JUDGMENT BY COURT

By this Application, the attached Memorandum of Points and Authorities, the accompanying declarations and the pleadings in this action plaintiff presents proof of the following matters:

1.        Defendant Gilbert Michael Gonzales has not responded to the Complaint within the time permitted by law.  Sperlein Declaration at ¶2.

2.        A clerk's default was entered herein on January 3, 2008.  *Id*. at ¶3.

3.        Defendant Gilbert Michael Gonzales is not an infant, and to the best of my knowledge is not an incompetent person or in military service or otherwise exempted under Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.* at ¶4.

4.        Plaintiff is entitled to judgment against said defendant on account of the claims pleaded in the complaint, to wit: Copyright Infringement, Contributory Copyright Infringement and Vicarious Copyright Infringement.

5.        The judgment sought is damages in the amount of two million, four hundred seventy-five thousand dollars ($2,475,000.00) for willful copyright infringement and an injunction ordering defendant to refrain from any infringing use of plaintiff's works in the future.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY COURT

Plaintiff Io Group, Inc. relies on the following points and authorities in support of its Application for Default Judgment by the Court.

-2-

**ISSUES TO BE DECIDED**

This memorandum supports plaintiff's Application for Default Judgment by the Court and presents the following questions: 1) the appropriate statutory amount to award for each infringed work; 2) whether defendant's actions were willful; 3) if defendant's actions were willful, the appropriate amount the statutory damage award should be increased; and 4) whether the Court should grant injunctive relief.

**STATEMENT OF FACTS**

1.    Io Group, Inc. is a California corporation doing business as "Titan Media," with its principal place of business located at 69 Converse Street, San Francisco, California 94103.  Io Group produces, markets and distributes adult entertainment products, including Internet website content, audiovisual works, photographs, etc.  Plaintiff operates and maintains a website by and through which its photographic and audiovisual works can be viewed by individuals who pay a monthly subscription fee.  1st Amen. Complaint at ¶5.

Defendant is an individual who has operated a series of websites designed specifically to freely distribute gay adult movies without regard to the ownership of the distributed works.  *Id.* at ¶¶ 7 and 8.

Gonzales did not develop a traditional website. For example he did not register a separate domain name or create pages for display from an owned or leased computer server. Rather, Gonzales took advantage of an emerging service now offered by many Internet companies.  Under this emerging business model, Internet service companies provide a domain name and hosting services so that individuals can then create their own web presence without separately obtaining a domain name or hosting facilities.  Generally, the service companies earn revenue by selling advertising space on or around the web pages the individuals create.  Examples of this

-3-

arrangement are facebook.com or myspace.com, where individuals can create a personalized home page with information about themselves, blogger.com where individuals can create their own blog which resembles an online diary, or ning.com where a user can create his own social network. The individuals are assigned a subdomain. For example one might find http://myspace.com/Titan http://Titan.blogspot.com, or http://Titan.ning.com.  Individuals who create these subdomain sites can usually do so without providing any identifying information, especially since there is no fee and credit card information is not exchanged. Because these subdomain environments can be set up anonymously they have become an environment favored by pirates. Webb Declaration at ¶3.

Defendant Gonzales created a series of these sites. As plaintiff discovered his infringing activity and caused one subdomain location to be terminated, defendant would simply create a new webpage and continue with his infringing activity.  *Id*. at ¶4.

**timeforcookies.blogspot.com**

In December 2006, plaintiff became aware that someone using the online persona of MikeyG was distributing its works by and through the blog located at http://timeforcookies.blogspot.com.  Plaintiff notified blogspot.com and blogspot terminated the blog. *Id*. at ¶5.

**hotgaylist.com**

On February 9, 2007, defendant, using his on-line persona MikeyG, joined hotgaylist.com, writing in his profile that he lived in Desert Hot Springs and was born November 18, 1964.  That same day defendant posted on hotgaylist.com links to an illegal copy of plaintiff's movie *Packers*. He did not include the real name of the movie and did not refer to plaintiff by name. Also on

February 9, 2007 defendant posted links to an illegal copy of plaintiff's movies *H20*.  *Id*. at ¶6 and Ex. A.

On February 19, 2007 he posted links to an illegal copy of *Laid Up*. On or about February 19, 2007 he posted links to an illegal copy of *ManPlay 22*. On March 1, 2007 he posted links to illegal copies of *Back to Barstow* and *Holler*. On March 2, 2007 he posted links to an illegal copy of *Boiler*. On March 6, 2007 he posted links to an illegal copy of *Eruption.*  In an obvious effort to avoid detection, defendant substituted a different title for each of the works and never used plaintiff's trade name.  *Id*. at ¶7.

**tforc2.blogspot.com**

In March 2007 plaintiff became aware of a new MikeyG blog named tforc2.blogspot.com, presumably short for "Time For Cookies Two".Defendant picked up where he left off, posting links to illegal copies of plaintiff's works *Boiler*, *H2O*; *Lifeguard*; *Riders*, *River Patrol*, *Road to Redneck Hollow*, *SeaMen - Fallen Angel IV*, *Slammer* and *Spy Quest*. Plaintiff cataloged the infringing activity and sent take down notices to blogger.com, noting that the MikeyG was a repeat infringer. *Id.* at ¶8.

**timeforcookies.blogbugs.com**

On February 9, 2007, defendant, again as MikeyG created a profile on blogsbugs.com and started a new blog called http://timeforcookies.blogbugs.com.  Gonzales apparently never developed this blog further.  *Id.* at ¶9.

**mcgmen.blogspot.com**

The next MikeyG blog to appear was http://mcgmen.blogspot.com.  On June 2, 2007 Defendant posted links to an illegal copy of *Folsom Leather* and on July 4, 2007 he posted links to

-5-

an illegal copy of *Sex in the City*. Once more, plaintiff sent a take down notice and the site was terminated. *Id.* at ¶10.

**mcgmen2.ning.com**

Defendant then opened a social network on a new website, Ning.com, still using the MikeyG moniker. There Gonzales set up a page at http://mcgmen2.ning.com. This new service allowed Gonzales to create a more complex presence called a social network. Defendant continued to make his own illegal posts, but using this new system he could also invite others to become members and make their own postings. Gonzales had control over who became a member of the site and could also control what members could post. In the course of several months defendant distributed eleven of plaintiff's titles by and through http://mcgmen2.ning and allowed members to illegally distribute an additional twenty-two (22) of plaintiff's works. *Id.* at ¶11. Defendant participated in discussions in this group in which he and other members openly mocked plaintiff's antipiracy efforts and discussed ways to avoid detection such as using pictures to describe movies rather than words so that word searches would not uncover the infringing activity. *Id.* and 1st Amend. Complaint at ¶¶ 24 and 29.

Defendant illegally distributed nine (9) of plaintiff's works on tforc2.blogspot.com, eight (8) works on hotgaylist.com, two (2) works on mcgmen.blogspot.com and eleven (11) works on mcgsmen2.ning.com. Gonzales also encouraged other individuals to reproduce and distribute unauthorized copies of copyrighted works through the piracy web blog he operated at mcgsmen2.ning.com. 1st Amended Complaint at ¶25. Defendant knowingly allowed his social network on Ning to be used to distribute an additional twenty-two (22) plaintiff owned works. Webb Declaration at ¶12.

Adding all of the infringed works, but only counting a work one time even if it was infringed from more than one location, and not including infringements that were the subject of earlier reached settlement agreements, defendant is subject to thirty-three (33) statutory damage awards. Sperlein Decl. at ¶5.

Plaintiff filed this action on September 28, 2007. Plaintiff properly served Gonzales a copy of the Summons and Complaint but Gonzales failed to file a responsive pleading. Upon notice from plaintiff, the Court entered default on January 3, 2008.

## ARGUMENT
### DAMAGES FOR COPYRIGHT INFRINGEMENT

Plaintiff respectfully requests that the Court enter judgment for Plaintiff's copyright infringement claims in the base amount of eight hundred twenty-five thousand dollars ($825,000).

In an action for copyright infringement, the copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement. Alternatively, at the election of the Plaintiff, the Court may award statutory damages in the amount of $750.00 to $30,000.00 per work as it considers just, increased to $150,000.00 in cases of willful infringement. 17 U.S.C. § 504.

Plaintiff has won numerous awards for its high quality work, beginning with an award for Best Gay Video in its first year in existence (1995). Since then Plaintiff has won awards nearly every year including awards for Best Art Direction, Best Videography, Best Packaging, Best DVD Extras, Best Cinematography and Best Editing. Plaintiff is recognized throughout the industry as one of the highest quality producers of gay erotica. 1st Amen. Complaint at ¶6.

Plaintiff uses high quality cameras and state of the art editing and reproduction equipment. Plaintiff's directors, cinematographers, photographers and editors are highly trained and all had

-7-

experience in film production prior to working for plaintiff. Plaintiff has high standards in its selection of performers.  Io Group has a strict policy of only portraying safer sex practices and even prohibits the portrayal of cigarette smoking in its productions.  Plaintiff is a well run, socially responsible company that produces high quality product.  Plaintiff's hard work and experience results in a product that contrasts sharply with product created by the many fly-by-night operations that are essentially one or two person operations using consumer grade equipment.  Webb Declaration at ¶13.

Plaintiff sets the licensing fee for its works higher than many inferior competitors who often flood the market with low quality inexpensive and readily available content.  Plaintiff also strictly controls how its content is distributed. For example, whenever possible plaintiff will not allow the distribution of its products to occur in conjunction with the distribution of material that portrays risky sexual practices without the use of condoms. Plaintiff works hard to protect the image of its brand thereby maintaining the value of its product.  *Id*. at ¶14.

Plaintiff's ability to sell DVDs and memberships to its website is directly dependant upon its ability to control the distribution of its works.  Simply – plaintiff cannot sell a movie if it is available for free on the Internet.  *Id*. at ¶15.

Defendant caused plaintiff harm by reproducing and distributing plaintiff's works and thereby decreasing the value of the works.  In doing so he took no precautions to prevent further distribution, and in fact encouraged the further distribution.  1st Amend. Complaint at ¶25.  In *Perfect 10*, plaintiff magazine publisher sued a website for publishing its photographs on the Internet.   Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect 10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download

and easy to copy.  A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement."  *Perfect 10, Inc. v. Talisman Communs., Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. (C. D. Cal. Mar. 27, 2000).  The Court went on to award the maximum statutory award for willful infringement ($100,000 at the time) for each infringed photograph.  Similarly, in the matter before the Court, once Defendant Gonzales made the works available on the Internet, all control of the works was lost and the works became available for unlimited distribution.

Io Group puts the public on notice that unauthorized use of any portion of one of its motion pictures will be assessed at $25,000.  Whenever plaintiff provides promotional material to reviewers, they must agree to a terms of use whereby they agree to a $25,000.00 assessment for unauthorized use of any video clip.  Plaintiff reiterates in its Terms of Use on its website, "[e]ach audiovisual work or any portion thereof contained herein has a retail value of $25,000.00 US."  Each visitor to the website must agree to these Terms of Service.  Webb Declaration at ¶16 and Ex. B.

A search of Io Group's membership records indicates that Defendant Gonzales purchased a membership to its website on at least two different occasions and thus would have agreed to its terms of use stating that unauthorized use of video clips would be assessed at $25,000.  *Id.* at ¶17 and Ex. C.

Plaintiff cannot locate and is unaware of any published decisions addressing the value of motion pictures which are specifically adult in nature. However, decisions regarding mainstream movies and television shows, as well as, awards in cases concerning adult photographs indicate that a base statutory award of $25,000 per movie would be well within the range that other federal courts have set base statutory damage awards.

On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringements of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who had been provided with a screener copy of the movies allowed the movies to be duplicated and distributed via the Internet. *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004). In C*olumbia Pictures Indus. V. Krypton Broad. Of Birmingham, Inc.*, the Ninth Circuit affirmed an award of approximately $72,000 per willful infringement of several half-hour television shows. *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001)(*cert denied*, 534 U.S. 1127 (2002).

Federal courts have awarded as much as $5,000 per photograph for adult works. *Playboy v. Webbworld*, 968 F. Supp. 1171, 1176 (E.D. Tex. 1997). Where infringement has been found to be willful Courts have awarded as much as $100,000 (the maximum award at the time) per adult photograph. *Perfect 10, Inc. v. Talisman Communs., Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. (C. D. Cal. Mar. 27, 2000).

In evaluating an appropriate statutory damage award for the unauthorized distribution of plaintiff's works as compared to a mainstream movie or television, the Court should consider that generally the retail cost of an adult movie is much higher then the retail cost of a mainstream movie. The suggested retail price for plaintiff's works ranges from $49 to $79. Webb Declaration at ¶18. Moreover, the retail price of one of plaintiff's movies stays relatively consistent over time. For example, one of the infringed movies, *River Patrol*, was the first movie plaintiff ever produced (1998) and it still has a suggested retail price of $69.00. *Id*. and Ex. D. By contrast Amazon.com is currently selling last year's Best Picture Oscar winner *The Departed* for as low as $13.99 and a two-disc edition of the 1941 Best Picture winner, *Gone with the Wind* also for $13.99. Sperlein Declaration at ¶6 and Ex. A.

The facts and law presented *supra.* establish that a base statutory award of $25,000 per movie is within the range provided for under the law, is consistent with damage awards made in other cases, and is warranted in the matter before the Court. However, perhaps defendant himself presents the most persuasive argument supporting an award of $25,000 per infringed work. In a forum discussing the ins and outs of piracy Gonzales, using the pseudonym MikeyG wrote the following:

> "And as far as paying for porn? Give me a [expletive] break– I did a little math, I posted a VERY popular DVD_R of a recent movie on 2 bit torrent sites – the torrents had over 500 downloaders. Retail price of the DVD: $59.99 – that's nearly $30,000. SO…please don't tell me how the porn companies are suffering – how many do you think were sold legitimately? When porn costs more than a mainstream DVD, there is something seriously wrong. Anyway…*hops off soapbox* it was fun while it lasted, there will be other boards popping up soon in the near future. See ya there!"

Webb Declaration at ¶19 and Exhibit E.

Defendant acknowledges that by distributing one of plaintiff's works through the Internet, he gives away the retail equivalent of nearly $30,000 of product in a very short period of time. Thus, plaintiff's request of $25,000 for each of the thirty-three (33) works defendant directly, contributorily or vicariously infringed is reasonable.

For the reasons stated below, plaintiff requests that the per work award be trebled to seventy-five thousand dollars ($75,000.00) per work.

### INCREASED DAMAGES FOR WILLFULNESS

"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Defendant knew or should have known his acts constituted copyright infringement. 1st Amended Complaint at ¶47.

He knew he did not have the copyright owner's permission to reproduce and distribute the works. In fact, previously plaintiff had successfully had defendants websites shut down by having various service providers terminate his accounts. Webb Declaration at ¶4. Moreover, defendant took measures to conceal his infringing activity by masking plaintiff's trademarks and the names of various works. 1st Amended Complaint at ¶¶ 24 and 48. These facts were well pleaded in the complaint and were therefore admitted by Defendant upon his default. *See Nishimatsu Construction Co., Ltd. V. Houston Nat'l Bank*, 515 F2d 1200,1206 (5th Cir. 1975); and *Danning v. Lavine*, 572 F2d 1386, 1388 (9th Cir. 1978).

"Willful" is not defined in 17 U.S.C. 504(c), but the courts have given ample definition of the term. The Second Circuit held, "a defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully with the meaning of § 504(c)(2) for purposes of enhancing statutory damages." *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.*, 807 F.2d 1110, 1115 (2nd Cir. 1986). And further that a "defendant's actual or constructive knowledge proves willfulness." *Id*. The Ninth Circuit Court of Appeals adopted this definition in *Peer International Corp. v. Pausa Records*, 909 F.2d 1332, 1335 n.3 (9th Cir. 1990). *See also*, *Spectavest, Inc. v. Fleet Street, Ltd*., No. 88-4539(RFP) 1989 U.S. Dist. LEXIS 16594 (N.D. Cal. Aug. 22, 1989)(Citing *Fitzgerald*); and *Reebox International v. Jemmett*, No. 87-1415, 1990 U.S. Dist. LEXIS 18519 (S.D.Cal. Oct. 4, 1990).

Not only did the defendant here know the works belonged to someone else, he actually knew precisely that they belonged to plaintiff and masked the true names of the works to avoid plaintiff's detection. 1st Amend. Complaint at ¶24.

The Supreme Court has held that the "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 233, 97 L. Ed.

276, 73 S.Ct. 222 (1952).  It is appropriate that the court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them".  *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N.Ill. 1987), *affirmed* 855 F. 2d 375 (D.N.Ill. 1987).  The court in *Korwin* held further that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors:  the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id.  See also*, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).

The facts here clearly portray a defendant sneering in the face of copyright owners and copyright laws. Defendant knew what he was doing was wrong. Every time plaintiff's anti-piracy efforts resulted in the closing of one of his blogs, defendant would simply open another.  Webb Declaration at ¶4.  Indeed, he bragged that he would just continue to do so. Again, defendant's own words show his level of contempt for plaintiff's intellectual property.

In March of 2007, MikeyG wrote on a public blog, "Time For Cookies on Thumblogger has been blocked […] I do belong to several other sites on the net that I will be contributing to […]. I have also started Time For Cookies on Blogger. […] The first time that I was bounced from Blogger, I had received the same e-mail from Titan about stealing from them and they threatened to close down all my buddies [sic] blogs as well. […] So please don't worry about TforC, it is alive and well just under the radar this time – and you can always find me on other blogs and websites as well!"  Webb Declaration at ¶20 and Ex. E.

On-line piracy is one of the greatest concerns plaintiff's business presently faces.  Plaintiff is a small business. It produces fewer than twenty movies a year and has a staff of about twenty employees. However, for the last five years, plaintiff has employed a full time in house attorney and an assistant who dedicate ninety percent of their time to anti-piracy activities including, but not limited to, ferreting out pirates, cataloging infringements, sending cease and desist letter and take down notices and litigating when necessary.  Nonetheless, the piracy continues. Plaintiff must

continue its efforts because ultimately people will not purchase what they can obtain for free. Webb at ¶21.

When determining damages for these willful acts, the Court should consider the extent of piracy and infringement taking place on the Internet, particularly in the arena of adult entertainment.  Lawfully produced adult works created within the confines and protections of the First Amendment are legally entitled to the same copyright protection as any other creative work. Clearly, there is a need for the deterrent effects contemplated by Congress when it included the willfulness provisions in 17 U.S.C. 504.

Accordingly, Plaintiff requests that the Court exercise the discretion granted to it under 17 U.S.C. § 504(c)(1) and award $75,000.00 for each of the thirty-three (33) works that defendant infringed directly, as well as for each work he indirectly infringed through the operation of mcgmen2.ning.com.

## A DAMAGES HEARING IS NOT REQUIRED BY LAW

An evidentiary hearing is not always required to establish damages prior to entering a default judgment.  *James v. Frame*, 6 F3d 307, 311 (5th Cir. 1993).  Federal Rule 55(b)(2) states that, "[i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court *may* conduct such hearings or order such references as it deems necessary and proper.   FRCP 55(b)(2) (Emphasis added).  If the Court believes it would benefit form oral argument, plaintiff will gladly appear. Otherwise, if defendant does not file an opposition, plaintiff submits the matter on the record before the Court.

-14-

**CONCLUSION**

Based on the above points and authorities, plaintiff prays that the Court:

1.  Enter a default judgment award of twenty-five thousand dollars ($25,000.00) per work for defendant's infringement of thirty-three (33) works, for a total of eight hundred twenty-five thousand dollars ($825,000.00);

2.  Find defendant's actions willful, and based on the willfulness of defendant's acts treble the base damage award for a total enhanced damage award of two million, four hundred seventy-five thousand dollars ($2,475,000.00); and

3.  Enjoin defendant from any future unauthorized use of plaintiff's copyrighted works.


Dated:  February 20, 2008                              Respectfully Submitted,

                                                       */s/ Gill Sperlein*
                                                       _____
                                                       GILL SPERLEIN
                                                       GENERAL COUNSEL, IO GROUP, INC.
                                                       Attorney for Plaintiff Io, Group, Inc.

-15-

[PROPOSED] ORDER

Having fully considered plaintiff's Application for Default Judgment and the Declarations and Exhibits in support thereof and reviewing the record, the Court grants the application as follows:

1.   Copyright Infringement

The Court grants plaintiff a base statutory damages award in the amount of twenty-five thousand dollars ($25,000.00) per work for defendant's infringement of thirty-three (33) works, for a total of eight hundred twenty-five thousand dollars ($825,000.00).

2.   Willful Copyright Infringement

The Court finds defendant's actions to be willful and thus trebles the base award to $75,000 per work for a total enhanced award of two million, four hundred seventy-five thousand dollars ($2,475,000.00).

3.   Injunctive Relief

The Court enjoins defendant from engaging in any unauthorized use of plaintiff's copyrighted works.

DATED:_____          _____

MARILYN HALL PATEL
United States District Judge

Plaintiff's Application for
Entry of Default Judgment
C-07-5026 (MHP)

## CERTIFICATE OF SERVICE

I am over 18 years of age, am employed in the county of San Francisco, at 69 Converse Street, San Francisco, California, 94110 in the office of a member of the Bar of the United States District Court for the Northern District of California. I am readily familiar with the practice of this office for collection and processing of correspondence for mailing with United Parcel Service and correspondence is deposited with United Parcel Service that same day in the ordinary course of business. Today I served the attached:

- APPLICATION FOR DEFAULT JUDGMENT
- DECLARATION OF KEITH WEBB IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY COURT
- DECLARATION OF GILL SPERLEIN IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY COURT

by causing a true and correct copy of the above to be placed in United Parcel Service at San Francisco, California in a sealed envelope with postage prepaid, addressed as follows:

Gilbert Michael Gonzales                    U.S. District Court
66640 Granada Avenue                       450 Golden Gate Ave.
Desert Hot Springs, CA  61867              San Francisco, CA 94103

                                            e-filing Chambers Copy

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on February 20, 2008.

                                            /s/ Eric Burford
                                            _____
                                            Eric Burford

I hereby attest that this is the declaration of Eric Burford and the original with Eric Burford's holographic signature is on file for production for the Court if so ordered, or for inspection upon request by any party. Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: *February 20, 2008*                  */s/ Gill Sperlein*
                                            _____
                                            GILL SPERLEIN,
                                            Counsel for Plaintiff Io Group, Inc.

-1-